**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| v. | Case No. 18-cr-375 (RC) |
| **JUSTICE SUH** | Sentencing Date: April 17, 2019 |
| **Defendant.** | |

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this Memorandum in Aid of Sentencing in the above-captioned case. Defendant Justice Suh is before this Court having pled guilty to one count of computer fraud on February 1, 2019, in connection with his unauthorized intrusion of a computer system owned by the Corp-Students of Georgetown, Inc. ("The Corp."). As set forth in the information in the above-captioned case, Mr. Suh knowingly caused the transmission of a program, information, code, or command, and a result of his conduct, intentionally caused damage to the Corp.'s computer system without authorization. In consideration of Mr. Suh's early plea in this matter, his minimal criminal history and the additional factors enumerated in 18 U.S.C. § 3553(a), the government requests a sentence of six months of probation.

**I.  FACTUAL BACKGROUND**

As laid out in greater detail in the Statement of the Offense stipulated to by Mr. Suh on February 1, 2019, the Corp. is an entirely student-run organization at Georgetown University that operates various shops and restaurants that are open to students and to the public. The Corp. employs more than 400 students at its numerous facilities and has an annual revenue in excess of $6 million. The Corp. stores its organizational documents and hosts its email via the Google LLC ("Google") G Suite, an internet cloud-based environment, facilitating remote access from any

electronic device capable of accessing the internet.  Beginning in 2015, Mr. Suh was employed with the Corp.'s IT department.  Mr. Suh then served as the Director of IT until his voluntary resignation on December 17, 2017.

On May 21, 2017, Mr. Suh compromised the Corp.'s internal system for employee work-time tracking, called "Corp Access."  From that system, he was able to obtain user information for a number of the Corp.'s employees, including their first and last names, email addresses, and passwords (collectively, "PII").  Mr. Suh then posted PII for 297 employees on May 22, 2017 via the publicly accessible website pastebin.com ("Pastebin") and sent an email to the Corp.'s listserv with a link to the Pastebin post.  He removed the information from Pastebin five hours after the initial posting.

The FBI contacted the individuals whose PII Mr. Suh had posted on Pastebin.  The victims indicated that the PII was accurate at the time of the post and many of them had used these credentials to access other online accounts, including online banking accounts.  Mr. Suh later acknowledged that he knows that individuals regularly use the same credentials to access multiple online accounts.

On March 21, 2018, at 5:29 pm, Mr. Suh accessed the Corp.'s G Suite and activated the user account "taylor@thecorp.org" (hereinafter, the "Taylor Account").  He then changed the password for the Taylor Account and elevated the account's privileges, granting it administrator status within the G Suite.  Mr. Suh logged out of the G Suite shortly thereafter.

Approximately 18 seconds later, Mr. Suh logged into the G Suite via the Taylor Account.  Using the administrator privileges newly granted to the Taylor Account, he removed administrator status from accounts that had been previously marked as administrators (for example, the IT General Manager's account) and changed the primary administrator account from the IT General

Manager's account to the Taylor Account, affording the Taylor Account super administrator status. Mr. Suh also removed his personal Google email account as the secondary email address for his G Suite account and replaced it with the email address of a different employee of the Corp. Finally, Mr. Suh removed administrator privileges for his G Suite account. He logged out of the Taylor Account at approximately 5:45 PM.

Five minutes later, Mr. Suh again logged into the G Suite using the Taylor Account and changed the password for the email account of the Corp.'s Chief Financial Officer ("CFO"). At approximately 6:56 PM, the CFO attempted to access his account and learned that the password for the account had been reset. Shortly thereafter, the Corp.'s board members realized that the Taylor Account was the sole super administrator for the G Suite. Accordingly, they could not access the G Suite to revoke super-administrator privileges, resulting in their loss of control over the Corp.'s data.

The Corp. used the web services company Namecheap, Inc. ("Namecheap") to register the company's domain name—thecorp.org. Upon losing control over the G Suite, the Corp.'s board members contacted Google to regain access. Google required that certain modifications be made to the Corp.'s domain to confirm that the board members had legitimate control of the G Suite. The board members contacted Namecheap to make the changes. However, the board members could not access the Corp.'s Namecheap account because they did not have the correct password. After several unsuccessful attempts to access the Namecheap account, the Corp.'s board members sought Mr. Suh's assistance as the former IT Director. Mr. Suh provided a fraudulent password for the Namecheap account to the board members.

Approximately thirty minutes after Mr. Suh changed the password for the CFO's account, Mr. Suh accessed and began modifying the Corp.'s Namecheap account. First, he reset the

password for the account and sent a new password to the email account for the Corp.'s Chief Operating Officer ("COO"). Then, using the administrator rights granted to the Taylor Account, Mr. Suh reset the COO's email password so he could breach the COO's account and obtain the password for the Namecheap account. At approximately 6:33 PM, Mr. Suh logged into the Namecheap account and changed the contact email for the Namecheap account to the Taylor Account.

At approximately 9:40 PM, Mr. Suh, using the Taylor Account, logged into the Corp.'s G Suite and deleted 239 user accounts and the Corp.'s entire G Suite, including its business and organizational documents. Once the Corp.'s board members realized that the G Suite had been deleted, they intended to close the Corp.'s business locations if they were unable to regain access to the G Suite data in forty-eight hours. The board members hired a private cybersecurity firm in an attempt to regain access. The firm told the board members that the incident appeared to involve an insider threat actor.

After various interventions, on March 22, 2018, the board members were finally able to log into the G Suite and review user activity. Based on that activity, the board members believed that Mr. Suh was responsible for the deletion of the G Suite data and user accounts, as well as modification of the Namecheap account. They reported the incident to the Metropolitan Police Department ("MPD") on March 22, 2018. In connection with the investigation, members of MPD spoke with Mr. Suh who denied any involvement.

On June 8, 2018, while FBI special agents executed a search warrant at his residence, Mr. Suh confessed to members of the FBI that he had carried out the intrusions of the Corp.'s computer system and the G Suite on May 21, 2017, and March 21, 2018, respectively. Mr. Suh admitted that in the May 2017 attack, he modified computer code to extract the user credentials as

employees logged into Corp Access. He then uploaded that PII to Pastebin and emailed a link to the Pastebin posting to all of the Corp.'s employees. Mr. Suh also admitted to deleting data within the G Suite in the March 2018 and to modifying the Corp.'s Namecheap domain records.

## II. Sentencing Recommendation

The Corp.'s victim impact statement, attached here as Exhibit 1, sets forth the numerous ways in which Mr. Suh harmed the Corp. Not only was the Corp. required to expend monies to a third-party IT consultant to respond to and remediate the effects of Mr. Suh's intrusion, its personnel also had to devote time to investigating that conduct. More importantly, Mr. Suh's actions constitute a significant breach of the trust that the Corp.'s employees had placed in Mr. Suh. Indeed, Mr. Suh was tasked with investigating the very May 2017 incident that he caused— and for which he fraudulently informed the Corp.'s personnel that he could not determine the person responsible. In connection with the March 2018 incident, the Corp. specifically asked Mr. Suh for his assistance with the Namecheap account. Mr. Suh not only provided a false password, he then hacked the Corp.'s Namecheap account and changed the contact information for that account. This action further delayed the Corp.'s ability to access the G Suite. As the Corp. makes clear, Mr. Suh, who previously served as the Corp.'s Director of IT, knowingly and flagrantly abused the Corp.'s trust: "Finally, although The Corp hopes that Mr. Suh's actions did not damage The Corp's reputation, which it has established by decades of dedicated and professional service to Georgetown's students and community service, the betrayal of the trust placed in Mr. Suh has harmed the organization." Ex. 1 at 2.

However, in considering an appropriate sentence, in addition to the nature and circumstances of the offense, the Court must also consider the history and characteristics of the defendant. Those factors weigh in favor of a sentence at the bottom of the Mr. Suh's federal

Sentencing Guidelines range. Mr. Suh has no criminal history and, at the time of the offense, was a junior at Georgetown University. In addition, Mr. Suh quickly took responsibility for his actions. Although he initially informed the MPD that he was not involved in the intrusion of the Corp.'s systems, he confessed to the FBI less than three months later. In addition, Mr. Suh voluntarily agreed to reimburse the Corp. for any expenses incurred by his actions and apologized to the Corp. Mr. Suh's willingness to accept complete responsibility and fully compensate the Corp. is notable and underlies the government's recommendation for a six-month probationary sentence.

Further, the government is sympathetic to the limitations imposed by Mr. Suh's diagnosis of Joubert Syndrome. As set forth in Mr. Suh's PSR, Joubert Syndrome "has affected his self-esteem and interactions with others. Moreover, his capability to handle emotional and social issues is delayed." PSR at 9-10. The government understands that Joubert Syndrome has negatively influenced the defendant's emotional development, as well as his as ability to engage socially. Indeed, Mr. Suh's criminal conduct is directly in line with his emotional immaturity and inability to appreciate the effect of his actions on others.

Although there is no question that Mr. Suh has betrayed the Corp.'s trust, his subsequent conduct, personal history and efforts at remediation counsel in favor of the government's proposal. The suggested six-month probationary sentence adequately reflects the seriousness of the offense, while also providing just punishment for the offense. 18 U.S.C. 3553(a)(2)(A).

Respectfully submitted,

JESSIE K. LIU
UNITED STATES ATTORNEY
D.C. Bar Number 472845

By: _____/s/_____
KAMIL E. SHIELDS
CHARLES J. WILLOUGHBY
Assistant United States Attorneys
N.Y. Bar Number 4770038 (Shields)
United States Attorney's Office
555 4th Street, N.W.
Washington, D.C.  20530
Telephone: 202-252-7507 (Shields)

# EXHIBIT 1



The Students of Georgetown Inc.
3700 O St NW
Washington, DC 20057

March 26, 2019

Judge Rudolph Contreras
US District Court for the District of Columbia
333 Constitution Avenue, NW
Washington, DC 20001

        RE:    United States v. Suh (Case No. 1:18-cr-00375-RC)

Dear Judge Contreras:

      On behalf of the Board of Directors of Students of Georgetown, Inc. ("The Corp"), I am submitting this Victim Impact Statement for consideration in the case of *United States v. Suh*.

      The Corp is a nonprofit and charitable organization comprised entirely of undergraduate students at Georgetown University in Washington, DC.  Since 1972, The Corp has been serving Georgetown students, offering low-cost, high-quality goods and services, while also providing students with hands-on business experience and funding philanthropic causes in the campus community.  The Corp operates a number of retail outlets on or near the Georgetown campus, as well as a food cooperative for Georgetown students.  The Corp has 410 student employees and has provided $85,000 in scholarships.

      Justice Suh is The Corp's former Director of Information Technology.  The Corp hired Mr. Suh in Fall 2015, and he served as IT Director from March to December 2017.  Mr. Suh hacked The Corp's computer system in May 2017, September 2017, and March 2018.  The Corp reported the incidents to the authorities and then fully cooperated with their investigation.

      The March 2018 hacks resulted in The Corp's computer system being inoperative for a period of time, which affected The Corp's ability to conduct business.  The Corp retained a third-party consultant who was able to fix our computer system.  The Corp was relieved to learn from the consultant that the hacking incidents caused no long-term damage to The Corp's computer system; in addition, the incidents did not compromise any financial or proprietary information.  However, the incidents caused harm to The Corp and its employees.  The consultant charged $5,980 for the work done to investigate and remediate the attacks.  In addition, personnel at The Corp had to devote significant time and efforts to responding to the



The Students of Georgetown Inc.
3700 O St NW
Washington, DC 20057

hacks and taking remedial measures.  The Corp estimated the number of hours diverted by employees as a result the hacks to be 375 hours, which translates to $4,715.62 in wage expenses.

In addition to these financial costs, Mr. Suh's actions caused emotional distress to several of The Corp's student employees.  Finally, although The Corp hopes that Mr. Suh's actions did not damage The Corp's reputation, which it has established by decades of dedicated and professional service to Georgetown's students and community service, the betrayal of the trust placed in Mr. Suh has harmed the organization.

The Corp wants to thank the personnel at the FBI and the U.S. Attorney's Office for their work on this case.  The Corp and its employees have fully cooperated with their investigation and are grateful to them for their efforts.

In addition, The Corp acknowledges Justice Suh's remediation efforts.  In June 2018, Mr. Suh's counsel contacted The Corp stating that Mr. Suh intended to take full responsibility for his actions and to reimburse The Corp for any expenses that he caused.  On September 5, 2018, Mr. Suh's attorney delivered a letter from Mr. Suh to The Corp.  In his letter to The Corp, Mr. Suh apologized for his hurtful and destructive actions, acknowledged that the actions were wrong, and offered to provide remediation for the harm caused by his actions.  He subsequently provided The Corp with a check in the amount of $10,695.62.  The Corp considers Mr. Suh's apology, in which he took full responsibility for the hacking incidents, and his payment of restitution to resolve the matter as between Mr. Suh and The Corp.

We appreciate the opportunity to submit this statement.


Sincerely,

*Maddie Oswald* (signature)

Maddie Oswald
COO & Vice President, Students of Georgetown, Inc.